## In the matter of JUAN LEON AND OTHERS.

Where, by a treaty between the United States and foreign nations, it is provided that seamen deserting from a foreign ship in the United States may be arrested on the complaint of the consul of that country, and remanded on board the vessel deserted by them, it is not competent for a State officer to cause such arrest; that can be done only by an officer of the federal government.

1846. June 4. Juan Leon, and five others, presented a petition for a writ of habeas corpus, setting forth that they had been arrested as deserters from a Chilean vessel; that they had shipped on board the vessel in Chili, on a voyage from Valparaiso to Talacuhana, thence to Coquimbo and back to Valparaiso, being a coasting voyage along the western coast of South America; that the master of the vessel had, without their consent, doubled Cape Horn, touched at Nantucket, and finally arrived in New York, where he had discharged them.

June 5. The prisoners were brought up by the keeper of the city prison, who returned that they were committed by warrant, signed by the recorder of New York, setting forth that they were deserters from a foreign vessel, and had been demanded by the consul of the country to which the vessel belonged, and ordering them to be arrested and brought before him in order to their being delivered up to such foreign consul.

*Nash & Bebee*, for prisoners, moved for their discharge on the following grounds:

1. The State tribunals have no jurisdiction under the treaty with Chili. (1 Conklin's Treatise, p. 26; 17 Johns R. 4; Constitution U. S., art. 3, § 12; 1 R. S. p. 14.)

2. Warrants of arrest cannot be issued by a State court officer to execute the acts of congress, or treaties with the United States.

3. The United States marshal, or his deputies, are the only persons who can serve a process under the act of congress. (Conklin's Practice, p. 400.)

4. Courts of limited jurisdiction must show sufficient on the face of their proceedings to give the tribunal jurisdiction, and without it the courts do not obtain jurisdiction to commit. On a warrant not showing sufficient on the face of it to authorize a commitment, the party is entitled to be discharged. (*See* pp. 457–8 Barbour's Criminal Treatise; 17 Johns. R. 4.)

5. The treaty cannot be carried into effect without an act of congress. No act has been passed, and therefore the treaty cannot be executed.

*Wright*, *contra*, insisted that the warrant of commitment was in strict conformity with the treaty with Chili, and that it was competent for any judge of any court within the United States to issue the warrant; that in doing so he acted merely ministerially, the consul being vested with the sole power of judging whether the persons arrested came within the provisions of the treaty.

*The Circuit Judge* gave the following opinion: By the twenty-ninth article of the treaty with the republic of Chili it is provided that the consuls of the contracting parties " shall have power to require the assistance of the authorities of the country for the arrest, detention and custody of deserters from the public and private vessels of their country; and for that purpose they shall address themselves to the courts, judges and officers competent, and shall demand the said deserters in writing, proving by an exhibition of the registers of the vessel, or ship's roll, or other public documents, that those men were part of said crew; and on this demand, so proved (saving, however, where the contrary is proved), the delivery shall not be

In the matter of Juan Leon and others.

refused. Such deserters, when arrested, shall be put at the disposal of said consuls, and may be put in the public prison at the request and expense of those who reclaim them, to be sent to the ships to which they belonged, or to others of the same nation." Congress has passed no law to carry this treaty into effect.

Upon the return to the habeas corpus, the question is presented to me, whether the powers granted by this article can be exercised by an officer of the State government, or whether they must be exercised only by officers of the national government?

The Constitution of the United States, in section one, article three, provides that "the judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the congress may from time to time ordain and establish; and by the second section of that article, that the judicial power shall extend to all cases in law and equity arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority," etc.

Under these provisions it has been established that no part of the criminal jurisdiction of the United States can be delegated to State tribunals, and that the admiralty and maritime jurisdiction is of the same exclusive cognizance. (*Martin* v. *Hunter's Lessees*, 1 Wheat. Rep. 337.)

So, too, it has been held that the jurisdiction of the State courts is in no instance excluded where they had a preëxisting jurisdiction, except in those cases of a national character, such as admiralty and maritime cases, and suits against ambassadors and other public ministers; but the jurisdiction of the State courts is excluded in cases of crimes and offenses cognizable under the authority of the United States. (*United States* v. *Lathrop*, 17 John. R. 9; *United States* v. *Campbell*, 6 Hall's Law Journal, 113; *State* v. *Feeley* [in Virginia], Sergeant's Constitutional Law, 272; *Haney* v. *Sharp*, 1 Dana's Kentucky Rep. 442; 1 Kent's Com. 401.)

By a parity of reasoning, the judicial power, so far as it is

to be invoked to the execution of a treaty, must be exclusive in the federal courts, for the simple reason that the execution of treaties must be under the control of the national government.    Any other construction might place the execution of a treaty entirely under the control of numerous local officers, over whom the national government would not be able to exercise any authority.

The power being, under the Constitution, in the federal courts, must be exclusive in them, because the State courts had no preëxisting jurisdiction.    The power in question is derived solely from the provisions of the treaty, and was not, of course, preëxisting in the State courts.

These considerations, arising out of the peculiar organization of our federal and State governments, are of themselves enough to show the want of jurisdiction in the recorder.    But there is another arising out of the language of the treaty; it is " the assistance of the authorities of the country," which is to be invoked.    What country?    The United States on the one side, and the republic of Chili on the other.    Those two " countries " are the contracting parties, and it is their " courts, judges and officers competent" to whom the consuls are to address themselves.    The recorder is, in no sense, a judge or officer of the United States.    He is an officer of an entirely independent sovereignty.

It therefore seems to me that the Chilean consul has erred in addressing himself to the State authorities, and the prisoners must be discharged.